# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 05-1452

TRACY LYNNE HEBERT, ET AL.

VERSUS

LAFAYETTE CONSOLIDATED GOVERNMENT, ET AL.

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2002-3418, DIVISION "E"
HONORABLE HERMAN C. CLAUSE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

JAMES T. GENOVESE
JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Michael G. Sullivan, Billy H. Ezell, and James T. Genovese, Judges.

REVERSED.

Rickey W. Miniex
Simien & Miniex
104 Rue Iberville
Post Office Box 81918
Lafayette, Louisiana 70598-1918
(337) 269-0222
COUNSEL FOR DEFENDANT/APPELLANT:
     Lafayette Consolidated Government

Kenneth D. St. Pé
428 Jefferson Street
Post Office Box 2877
Lafayette, Louisiana 70502
(337) 232-8177
COUNSEL FOR PLAINTIFFS/APPELLEES:
     Tracy Lynne Hebert and Kelly Hebert,
     individually and on behalf of their minor
     children, Chase Guidroz and Chaz Hebert

**GENOVESE, Judge.**

Defendant, Lafayette Consolidated Government (City), appeals the judgment of the trial court finding it fifty percent at fault for Plaintiff's automobile accident which allegedly resulted from an unreasonably dangerous roadway. For the following reasons, we reverse.

## FACTS

This personal injury action arose from a single-vehicle accident which occurred on Lajaunie Road in Lafayette Parish, Louisiana, at approximately 12:50 p.m. on September 8, 2001. In that accident, Plaintiff, Tracy Lynne Hebert (Hebert), was traveling on a wet road in rainy weather with her nine-year-old son, Chaz Hebert, northeast on Lajaunie Road, approaching an "s-curve" in the roadway. Hebert alleges that the roadway contained a water-filled rut which caused her car to jerk to the right. Hebert asserts that she sustained injuries when her vehicle left the roadway, struck two road signs, and hit the guardrail in the curve. Hebert contends that her accident occurred because the roadway contained an unreasonably dangerous condition.

Hebert instituted suit against the City and the State of Louisiana, through the Department of Transportation and Development (DOTD), to recover for her injuries. The DOTD was dismissed from this lawsuit pursuant to motion for summary judgment upon the City's admission, and the trial court's determination, that the City was solely responsible for the maintenance of Lajaunie Road.

A bench trial in this matter was held on May 2, 2005. Oral reasons for judgment were given on May 3, 2005. The trial court found Hebert and the City equally at fault for Hebert's accident and awarded Hebert damages for past medical expenses and pain and suffering. The City timely appealed the judgment, asserting

1

four assignments of error.

## ISSUES

On appeal, the City contends that the trial court erred in: (1) finding that there was a rut in the road at the time of the accident; (2) finding that a rut in the road was the cause of the accident; (3) finding that a rut in the road created an unreasonable risk of harm; and (4) allocating fifty percent fault to the City.

## LAW AND DISCUSSION

### *Standard of Review*

The standard of review which we must apply in examining the factual conclusions of a trier of fact was articulated by our supreme court in *Rosell v. ESCO*, 549 So.2d 840 (La.1989), and reiterated in *Stobart v. State, through Dep't of Transp. and Dev.*, 617 So.2d 880, 882-83 (La.1993):

> A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." *Rosell v. ESCO*, 549 So.2d 840 (La.1989). This court has announced a two part test for the reversal of a factfinder's determinations:
>
> > 1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
> >
> > 2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
>
> . . . .
>
> . . . [T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. . . .
>
> Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Rosell*

2

*v. ESCO*, 549 So.2d 840 (La.1989); *Arceneaux v. Domingue*, 356 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. *Rosell*, 549 So.2d at 844-45. Nonetheless, this Court has emphasized that "the reviewing court must always keep in mind that 'if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" *Housley v. Cerise*, 579 So.2d 973 (La. 1991) (*quoting Sistler v. Liberty Mutual Ins. Co.,* 558 So.2d 1106, 1112 (La.1990)).

We have thoroughly examined the record in these proceedings in light of these legally stated principles, and we find from the record that a factual basis does not exist for the trial court's finding of liability on the part of the City and that said finding is clearly wrong.

### *Unreasonably Dangerous Condition and Notice*

The standard of care owed by the City to drivers on its roads is found in La.R.S. 9:2800[1]. Under this statute, to meet her burden of proof, Hebert must show:

---

[1]Louisiana Revised Statutes 9:2800 provides:

    A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.

    B. Where other constructions are placed upon state property by someone other than the state, and the right to keep the improvements on the property has expired, the state shall not be responsible for any damages caused thereby unless the state affirmatively takes control of and utilizes the improvement for the state's benefit and use.

    C. Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.

    D. Constructive notice shall mean the existence of facts which infer actual knowledge.

3

(1) Lajaunie Road was in the care, custody and control of the City; (2) Lajaunie Road had a vice or defect which created an unreasonable risk of harm; (3) Hebert's injury was caused by the defect; and (4) the City had actual or constructive knowledge of the dangerous condition. *McDaniel v. Carencro Lions Club*, 02-1244 (La.App. 3 Cir. 3/12/03), 846 So. 2d 837, *writs denied*, 03-1061, 03-1065, 03-1069 (La. 6/27/03), 847 So.2d 1269 (citing *Dupree v. City of New Orleans*, 99-3651 (La. 8/31/00), 765 So. 2d 1002).

There is no dispute that Lajaunie Road was in the care, custody, and control of the City; however, the City argues that an unreasonably dangerous condition did not exist in the roadway at the time of the accident at issue herein, and if one did, the City had no prior knowledge of said unreasonably dangerous defect.

The trial court apparently found that Lajaunie Road was unreasonably dangerous on the date of the accident at issue herein; however, in its oral reasons for judgment, the trial court was less than unequivocal, stating "I think the evidence has established the presence of a rut in the road surface, *at least some time after, but close enough in time* for the [c]ourt to conclude that that rut *probably existed* at the time of this accident" (emphasis added).

The City contends that the evidence presented at trial does not support the trial court's finding that there was a rut in the road at the time of the accident. The City argues that trial court erred by accepting the testimony of Hebert's expert witness, Dr. Olan Dart, as sufficient proof that a rut existed in the road on September 8, 2001, the date of the accident. We agree.

Dr. Dart testified that he examined photographs of the location of Hebert's accident. The photographs were taken by Hebert and her counsel on November 22,

4

2001 – over two months after the accident – and like on the date of Hebert's accident, the weather was rainy and the road was wet. Dr. Dart also personally examined the roadway at the site of Hebert's accident on April 5, 2002, almost seven months after the accident at issue herein. When describing what he observed on April 2, 2002, Dr. Dart stated "[t]here was a rut in the right-hand wheel path . . . measur[ing] . . . approximately forty-five (45) feet long and had a depth of one (1) inch . . . [that] began fairly near the beginning of the curve. It looked like it started about ten (10) feet before what I estimated to be the beginning of the curve." Dr. Dart asserted that he believed the accident occurred "when she [Hebert] got her right wheel, particularly the right front wheel, went into this rut which was filled with water and she . . . experienced a retardation." When questioned about the speed at which Hebert was driving, Dr. Dart conceded that "usually a speed of something close to thirty-five (35) miles-per-hour or higher would probably be necessary to get a significant retardation of force on that right front wheel to cause a vehicle to go to the right. At twenty (20) or twenty-five (25) miles-an-hour, it probably wouldn't be sufficient." Dr. Dart also admitted that there was no way he could know whether a rut existed at the time of the accident. When asked how long the rut in the roadway existed, Dr. Dart stated "there's no way to know exactly, but it had probably been there for several months, maybe a year." Dr. Dart also conceded that it was conceivable that a depression could be caused by a heavy vehicle passing on an asphalt surface only once.

Corporal Jimmy Richard, a police officer with the Lafayette City Police Department since 1992, was the investigating officer who responded to the accident. Corporal Richard testified that upon arriving at the accident scene, Hebert could not remember how fast she was driving, but did recall her saying that "she was going

5

down the road and instead of -- when she tried to turn her wheel to go with the curve, she continued straight on." Hebert did not mention to him that she hit a rut or puddle of water on the roadway, nor did she mention feeling a jerking motion before she lost control of her car. Corporal Richard testified that he investigated the scene by checking the roadway for ruts and defects, but found none to exist. After he interviewed Hebert and investigated the accident scene, Corporal Richard concluded that "she was either inattentive or distracted at the time of the accident." Corporal Richard explained his reasoning for reaching said conclusion as follows:

> Being that it was raining off and on, the roadways were wet, and the curve is a sharp curve, and the Department of Transportation concluded that its recommended speed should be twenty-five (25) miles-an-hour to go around the curve. Being that her vehicle -- the striking path, the items that she struck, proved to me that she was not able to make a turn. Her vehicle went straight in the direction where she was heading prior to the curve.

Dr. Joseph Blaschke, the City's expert witness who specializes in traffic engineering, testified that one heavy vehicle could cause a linear depression to develop in asphalt. Dr. Blaschke also agreed with Dr. Dart's conclusion that Hebert was driving between thirty-five and forty miles-per-hour.

The City also presented its street superintendent, Steve Trumps, and its engineering aide specialist, Ricky Leger, who testified about the City's inspection procedures. Mr. Trumps testified that the City had no complaints about this particular curve or any notice of a depression, or rut, on the roadway. According to Mr. Leger, he conducts annual inspections of all the roads in Lafayette Parish and, at the location of Hebert's accident, his inspection in March of 2001 revealed no noticeable defects.

Hebert testified that immediately prior to her accident she did not see anything in the road, including ruts or puddles, nor did she hear water splashing. Despite the

6

wet conditions, Hebert admits that she was traveling at least thirty-five miles per hour in a twenty-five mile-per-hour speed zone in rainy weather. Hebert did not communicate to the investigating officer that her vehicle hit a rut in the road or that she felt her vehicle jerk just before she lost control, nor did she relay this version of events to her treating physicians. When asked to describe her accident on the patient information form of the Lafayette Bone and Joint Clinic, Hebert wrote "[t]he roads were very wet and as I was making a curve, my car just started sliding." In response to Dr. Alan Appley's patient information form, Hebert described her accident in much the same manner by writing "[t]he roads were wet and as I was taking a curve, my car started sliding and could [sic] not maintain control." Though Hebert asserts that her accident was a result of the conditions of the roadway, we find this argument unpersuasive and the evidence insufficient in support thereof.

A driver of a motor vehicle has a duty not to drive at a speed greater than is reasonable and prudent under the weather conditions and potential hazards then existing. *See* La.R.S. 32:64(A). "Extremely adverse driving conditions call for unusual caution on the part of motorists." *Tolbert v. Fireman's Fund Ins. Co.*, 98-637, p. 6 (La.App. 3 Cir. 10/7/98), 719 So.2d 738, 741 (quoting *King v. King*, 253 La. 270, 280, 217 So.2d 395, 398 (La.1968)). Hebert's speed on a wet roadway upon entering a curve was clearly unreasonable. Further, a thorough review of the evidence in the record fails to establish a sufficient evidentiary basis to support the trial court's finding that Lajaunie Road presented an unreasonably dangerous condition to drivers and that the City had notice of the existence of said defect. Therefore, we find that the trial court was clearly wrong in finding the City liable without a sufficient factual basis to support said finding. Having found that the City

7

is not liable for Hebert's accident, thereby reversing the trial court's judgment, this court need not address any remaining issues as these have now been rendered moot.

## DECREE

For the above reasons, the judgment of the trial court is reversed. All costs of these proceedings are assessed against Plaintiff/Appellee, Tracy Lynne Hebert.

**REVERSED.**